Jason D. Schall (D.C. Bar No. 495070)
Lauren B. Poper (N.Y. Bar No. 2796704)
U.S. Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-6270
Facsimile:  (202) 772-9292
schallj@sec.gov
*Attorneys for Plaintiff U.S. Securities & Exchange Commission*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES SECUIRITIES & EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MAHMOUD ALI ABDELKADER,<br><br>Defendant. | Case No. 3:23-cv-1032<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, the United States Securities and Exchange Commission ("SEC" or "Commission"), alleges the following:

**SUMMARY**

1. This case centers on insider trading by Defendant Mahmoud Ali Abdelkader ("Abdelkader") in the securities of Audentes Therapeutics, Inc. ("Audentes") before the public announcement that it was being acquired by a subsidiary of Astellas Pharma, Inc. ("Astellas").

2. Abdelkader's wife worked for Audentes. Through her employment, she learned of a series of events from which she was able to deduce, and from which reasonable investors would be able to deduce, that Audentes was likely in the process of being acquired.

3. The likelihood that Audentes was in the process of being acquired was material nonpublic information.

4. Abdelkader's determined, based on facts he learned from his wife, that there was a high likelihood of Audentes being acquired.

5. Abdelkader misappropriated this material nonpublic information from his wife. Using the information he misappropriated from her, Abdelkader purchased 30 short-term, out-of-the money Audentes call options on October 17 and October 18, 2019. Abdelkader also placed a limit order to purchase an additional 15 short-term, out-of-the-money Audentes call options on October 17, 2019, which was filled on November 18, 2019. Abdelkader's options purchases totaled $3,524.90.

6. On December 2, 2019, Audentes publicly announced the acquisition agreement, causing Audentes's stock price to increase 106% from closing at $28.61 on December 2 to $58.93 on December 3.

7. Abdelkader sold his call options on or about December 5, 2019 for $85,105.73 realizing $81,580.83 in illegal profits.

8. By engaging in the conduct described in this Complaint, Abdelkader violated, and unless enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**JURISDICTION AND VENUE**

9. The Court has jurisdiction over this action pursuant to Sections 21, 21A, and 27 of the Exchange Act, 15 U.S.C. §§ 78u, 78u-1, and 78aa.

10. Venue is proper in this judicial district pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa, because certain of Defendant's acts constituting the violations alleged

herein, including trading on material nonpublic information, occurred in this district. Additionally, Defendant resides in Marin County, within this district.

11. Assignment to the San Francisco Division is appropriate pursuant to Civil Local Rule 3-2(c) and (e) because a substantial part of the events or omissions giving rise to the SEC's claims occurred in San Francisco County and Defendant resides within Marin County.

12. Defendant, directly or indirectly, used the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange, in connection with the violations alleged in this Complaint.

## DEFENDANT

13. **Mahmoud Ali Abdelkader** resides in the Northern District of California. At the times relevant to this complaint, he lived in San Francisco, California. Abdelkader is a citizen of the United States.

## RELEVANT ENTITIES

14. Audentes, later known as Astellas Gene Therapies, Inc., is a gene therapy corporation, incorporated in Delaware. It was acquired by Asilomar Acquisition Corp. ("Asilomar") on or about January 15, 2020.

15. Asilomar Acquisition Corp. ("Asilomar") is or was a Delaware corporation wholly-owned by Astellas. Astellas completed its acquisition of Audentes through Asilomar.

16. Astellas is a multinational pharmaceutical company incorporated in Japan. It acquired Audentes, through Asilomar, on or about January 15, 2020.

## TRADING TERMINOLOGY

17. Common stock is a form of equity ownership in a corporation.

18. Options contracts are financial instruments that offer the buyer an opportunity to buy or sell – depending upon the type of options contract – an underlying asset such as stock.

19. A call option is a specific type of options contract that gives the owner the right, but not the obligation, to buy 100 shares of the underlying stock at a set price per share, known as the option's strike price, on or before a set future date, known as the option's expiration date.

20. Generally, the holder of a call option benefits when the price of the underlying stock increases. Thus, a trader might purchase a call option if he or she expects the underlying stock's price to exceed the strike price before the expiration date.

21. A call option is considered "out-of-the-money" when the current market price of the underlying stock is lower than its strike price.

22. A limit order is an order that an investor makes to purchase a security, including an options contract, at or below a certain price. Instead of paying market price for the security, the buyer sets the price that he or she is willing to pay for a certain number of shares or options contracts. The buyer is guaranteed to pay that price or less because the order is executed only when the seller's price matches the amount set by the buyer. If the specified price is never met, the order is not filled.

23. A market order is an order that an investor makes to purchase a security, including an options contract, immediately at the best available price.

## FACTS

### I. Astellas' Acquisition of Audentes

24. On October 3, 2019, Astellas made a non-binding offer to acquire Audentes.

25. On or about October 5, 2019, Audentes's Senior Vice President of Program Management was informed of the acquisition efforts, and she ultimately led Audentes's work on the due diligence process for the acquisition.

26. In early October 2019, there were several changes to the operations of the Program Management department to perform the work needed for the acquisition and maintain the confidentiality of the acquisition.

27. Among these changes were the following: the Senior Vice President limited the access of her Project Coordinator (an administrative position) to the substance of her calendar entries; the Senior Vice president asked the Project Coordinator to clear her schedule for two weeks; the Program Management group's focus was directed away from the customary budgeting process towards other tasks; an off-site retreat for the Program Management group was delayed; a Board of Directors meeting, for which the Program Management meeting was preparing a presentation, was cancelled; there was heightened management attention on a particular project and the Project Coordinator did not participate in her usual role regarding the project.

28. Through her work at Audentes and her contacts with work associates, Abdelkader's wife learned of these events in early October 2019 and also learned in early-mid October 2019 that other Audentes departments were experiencing similar changes as the Program Management department.

29. In October and November 2019, personnel in Audentes's Program Management department performed work related to the acquisition's due diligence.

30. On December 2, 2019, Astellas announced that it was acquiring Audentes, through Asimolar, for $60.00 per share, more than twice the closing share price that day.

31. The acquisition was publicly announced on December 2, 2019. Until then, the deal terms and the work being done on the deal were considered confidential and non-public.

**II.    Abdelkader Misappropriated Material Nonpublic Information Regarding The Audentes Acquisition From His Wife.**

32. By at least October 10, 2019, Abdelkader's wife found out about the developments listed in paragraph 27 and deduced from them that Audentes was likely in the process of being acquired.

33. On that day, she expressed to a co-worker her belief that recent changes in the Program Management group indicated that Audentes was likely in the process of being acquired, and the co-worker agreed.

34. The developments listed in paragraphs 27 and 28 were not public information at the relevant time period.

35. The likelihood that Audentes was being acquired would have been material to a reasonable investor in October 2019.

36. A reasonable investor who learned of the series of changes to the Program Management group's operations in October 2019 would have deduced that Audentes was likely in the process of being acquired, as Mr. Abdelkader's wife in fact deduced.

37. A reasonable investor who also learned of similar changes to other groups' operations would have more certainly deduced that Audentes was likely in the process of being acquired, as Mr. Abdelkader's wife in fact deduced.

38. In addition to Abdelkader's wife, other Audentes employees who were privy to the developments listed in paragraphs 27 and 28 also deduced that Audentes was likely in the process of being acquired and discussed their views with Abdelkader's wife.

39. By October 15, 2019, Abdelkader's concluded, based on facts he learned from his wife, that there was a high likelihood that Audentes was in the process of being acquired.

### III. Abdelkader Purchased Short-Term, Out-of-the-Money Call Options in Audentes on the Basis of the Material Nonpublic Information He Misappropriated.

40. While in possession of, and on the basis of, material nonpublic information, Abdelkader purchased Audentes call options.

41. On October 15, 2019, Abdelkader checked the prices of Audentes call option contracts.

42. On October 17, 2019, he put in two orders for Audentes call option contracts: (1) a market order for 15 call option contracts, with a strike price of $45, expiring on February 21, 2020, which cost $1,143.20; and (2) a limit order for 15 call option contracts, with a strike price of $35, expiring February 21, 2020.

43. The limit order was filled on November 18 at a cost of $1,359.75.

44. On October 18, 2019, Abdelkader purchased 20 more Audentes call option contracts, with a strike price of $45, expiring on February 21, 2020, which cost $1,021.95.

45. Thus, in total, Abdelkader purchased 50 Audentes call option contracts for $3,524.90.

46. Audentes's stock closed at or around $27.09 on October 17, 2019 and at or around $26.85 on October 18, 2019. So Abdelkader's call options were deep out-of-the money; in placing these trades he would profit if the value of Audentes's stock would increase by over two-thirds in about four months.

47. When Astellas's acquisition of Audentes was announced on December 2, 2019, it caused Audentes's stock price to increase by over 100%.

48. Abdelkader sold all of his Audentes call options on or about December 5, 2019 for a total of $85,105.73.

49. After deducting the cost of the options, Abdelkader made $81,580.83 in illegal profits.

**IV.    Abdelkader Violated the Federal Securities Laws.**

50. At all relevant times, Abdelkader owed a duty of trust and confidence to his wife, based on their relationship which included a history, pattern, and practice of sharing confidences.

51. Abdelkader obtained material, nonpublic information about the Audentes acquisition from his spouse, who learned about the acquisition from her employment.

52. A reasonable investor would have viewed the information about the Audentes acquisition as being important to the decision of whether to invest in Audentes securities.

53. Abdelkader knew, or was reckless in not knowing, that the information he obtained about the Audentes acquisition was material, nonpublic information and that he owed a duty of trust and confidence to his spouse not to trade Audentes securities on the basis of that information.

54. By purchasing Audentes call option contracts after learning information relating to the acquisition, Abdelkader misappropriated material, nonpublic information for securities trading purposes, in breach of a duty of trust and confidence he owed his wife.

# CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

55. The Commission re-alleges and incorporates by reference paragraphs one through 54 as though fully set forth herein.

56. By virtue of the foregoing, Abdelkader, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange to:

    a. employ devices, schemes, or artifices to defraud;

    b. make untrue statements of a material fact or to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c. engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

57. By virtue of the foregoing, Abdelkader, directly or indirectly, violated and, unless restrained and enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

# PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

## I.

Finding that Abdelkader violated the provisions of the federal securities laws as alleged herein;

## II.

Permanently restraining and enjoining Abdelkader and his agents, servants, employees, and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from, directly or indirectly, engaging in conduct in violation of

Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**III.**

Ordering Abdelkader to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)];

**IV.**

Ordering Abdelkader to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**V.**

Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried before a jury.

Respectfully submitted,

Date: March 7, 2023                    /s/ *Jason D. Schall*

Jason D. Schall (D.C. Bar No. 495070)
Lauren B. Poper (N.Y. Bar No. 2796704)
U.S. Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-6270
Facsimile: (202) 772-9292
schallj@sec.gov
*Attorneys for Plaintiff U.S. Securities & Exchange Commission*